### GREEN v. STRUBLE et al.

No. 19668. Opinion Filed Feb. 11, 1930.

Commissioners' Opinion, Division No. 2.

Jesse L. Ballard and Stanard & Carey, for plaintiff in error.

Hatchett & Ferguson and Richard L. Wheatley, for defendants in error.

HERR, C. This is an action brought by Josephine Green in the district court of Craig county, against W. F. Struble and others, to foreclose a real estate mortgage. The trial was to a jury, resulting in a verdict and judgment thereon in favor of defendants. Plaintiff appeals.

The mortgage in question was given by defendants Struble to the Conservative Loan Company to secure a note in the sum of $1,800 executed by said defendants to said company. The Conservative Loan Company was thereafter reorganized and was known as the Conservative Loan & Trust Company, successor to the Conservative Loan Company, at the time this action was brought.

The note and mortgage here involved was, together with other papers, sold and transferred by the Conservative Loan Company to the First Trust Company of Omaha, Neb., which company sold and transferred it to plaintiff herein. Plaintiff took the note by assignment from the Conservative Loan Company, said company having assigned it in blank to the First Trust Company. Plaintiff, immediately upon receipt of this assignment, placed the same of record in the office of the county clerk of Craig county, Okla., the same having been recorded on August 2, 1917. The note in question matured May 1, 1924. On the 29th day of September, 1917, the Strubles sold the land covered by the mortgage to their codefendant L. C. Kincade. Thereafter, and in March, 1923, Kincade and his wife procured a loan from the Commerce Trust Company in the sum of $1,300 and executed their mortgage on the premises here involved to secure the same. At that time, the Conservative Loan Company note and mortgage, then owned and held by plaintiff, was not due and was still unpaid. In order to close this loan with the Commerce Trust Company, it was necessary to take up the prior loan with the Conservative Loan Company, and, in order to accomplish this purpose, Kincade, on April 24, 1923, remitted to the Commerce Trust Company the sum of $635, which amount, together with the $1,300 loan procured by him from the Commerce Trust Company, was sufficient to discharge said loan, including principal and interest. This amount was subsequently paid

by the Commerce Company to the Conservative Loan & Trust Company, successors to the Conservative Loan Company, on April 27, 1923, at which time the original loan had not yet matured. The Conservative Loan & Trust Company failed to remit to plaintiff.

This payment is pleaded as a defense by the defendants, they contending that the Conservative Loan & Trust Company was the agent of plaintiff and acting for her in receiving the money.

Plaintiff contends that the evidence is wholly insufficient to establish agency as between herself and the Conservative Loan & Trust Company, and, at the conclusion of the evidence, requested the court to direct a verdict in her favor, which request was by the court denied. This ruling is assigned as error.

We think this assignment well taken. There is no evidence tending to establish agency between plaintiff and the Conservative Loan & Trust Company. This is conceded by defendants, but their contention is that plaintiff made the First Trust Company of Omaha her agent for the collection of this paper, and that the Conservative Loan & Trust Company was acting as its agent in the matter. They further contend that, under the facts in the instant case, the First Trust Company of Omaha was impliedly authorized to appoint a subagent.

The evidence conclusively establishes that the Conservative Loan & Trust Company was the agent of the First Trust Company of Omaha in collecting principal and interest due on paper purchased by it from said company, as it purchased all such paper under a working agreement to that effect.

It is not contended by defendants that plaintiff expressly authorized the First Trust Company of Omaha to appoint the Conservative Loan & Trust Company as a subagent in the matter, but that such authority is to be implied from the facts and circumstances of this case.

The evidence is that plaintiff had purchased other paper from the First Trust Company, and that said company voluntarily assisted her in the collection of the paper, and that she accepted and expected such service, but that there was no agreement entered into at any time between her and said company to that effect.

It is further established by the evidence that plaintiff at no time gave said First Trust Company of Omaha direct authority nor, in any manner, directed it to make any collections in her behalf or that she at any time intrusted her business with said company.

The evidence further shows that the interest coupons, as they matured on this loan, were regularly paid by the Kincades to the Conservative Loan & Trust Company; that said company promptly remitted the same to the First Trust Company of Omaha, which company would, in due course of business, notify plaintiff that the money was there and the coupons were then canceled and by her delivered to the said First Trust Company, which company then mailed said canceled coupons to the Conservative Loan & Trust Company.

It is undisputed that these interest coupons always remained in the possession of plaintiff until paid and that she at no time placed any of them in the hands of either the First Trust Company of Omaha or the Conservative Loan & Trust Company of Shawnee for collection.

In our opinion, this evidence is wholly insufficient to establish that plaintiff impliedly authorized the First Trust Company of Omaha to appoint the Conservative Loan & Trust Company as a subagent for the collection of either the principal or interest due on this obligation.

Defendants rely on the case of Brouse v. Cox, 129 Okla. 130, 263 Pac. 1088. In our opinion, this case is not controlling as the facts therein differ widely from the facts in the instant case. In that case Lillian Brouse was the holder of a certain note and mortgage executed by mortgagors to the Security Land Credit Company. This paper was indorsed in blank and delivered to Robinson, Catlin, Mulford & Smith, who sold it to her. She thereafter placed this paper in the hands of said firm for collection with specific directions to them to handle in such manner as they saw fit, and it further appears from the opinion that a general agency as between her and said firm was shown by the evidence. In the opinion it is said:

"It appears that the interest coupons when due where intrusted to Robinson, Catlin, Mulford & Smith, who in turn sent them to the Security Land Credit Company for collection. * * *

"We do not wish to be understood as holding that the mere placing of the notes or coupons by plaintiff with Robinson, Catlin, Mulford & Smith for collection, would authorize that firm to employ a subagent for the purpose of collecting same, but when she

clothed them with authority to handle her business generally in such way as they saw best, and to use such methods as they chose, then, if reasonable necessity arose for the appointment of a subagent, authority was implied to appoint such subagent."

The main facts upon which this opinion was based are absent in the instant case.

Swearingen v. Moore, 138 Okla. 24, 280 Pac. 295, may also be distinguished from the instant case. In that case the investor appointed Hellman & Nack as agents to make investments for her; clothed them with general authority to procure investments and make collections. They had transacted business of this nature for her during a period of 15 years. In conducting this business for her, during this time, it was their custom and practice to appoint subagents to make collections. The evidence in the case was sufficient to warrant a finding that the investor knew of this custom and acquiesced therein and knew that subagents would be appointed by them in the handling of her business. No such facts appear in the instant case.

It is specifically pointed out in the opinion in the case of Brouse v. Cox, supra, that the mere placing of a note in the hands of an agent for collection does not impliedly authorize such agent to appoint a subagent. No facts appear in this case from which such authority may be implied. Plaintiff in the instant case did not place the note and coupons in the hands of the First Trust Company of Omaha for collection, but simply received the interest payments from said company when collected by it. She at no time specifically directed said company to make such collections. The evidence is also clear that she had no knowledge that any of these interest coupons were paid to the Conservative Loan & Trust Company. It is also clear that she had no knowledge of the working agreement between these companies. Under the evidence, she knew, through a course of dealing between herself and the First Trust Company, that said company would aid her in making collections, but under the authority relied upon by defendants, this did not authorize said company to appoint a subagent for this purpose. She at no time directed said company to handle her business in such manner as it might choose.

We think the facts of the instant case bring it squarely within the rule announced by this court in the case of Bale v. Wright, 120 Okla. 174, 252 Pac. 56, in paragraph 1 of the syllabus. It is said:

"The payment of a negotiable promissory note before maturity by the mortgagor or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon an assignee thereof who has possession of the note and mortgage at the time of payment unless he has expressly or impliedly authorized such payment."

And in the body of the opinion, at page 176, 120 Okla., the court says:

"* * * No contention is made that plaintiff expressly authorized the loan company to collect either the principal or the interest, but it is contended that Sheean, who acted as broker in buying the note and mortgage from the loan company for the plaintiff, by reason of having had other transactions with the loan company, must have known of the universal custom testified to by defendants' witnesses, that in such cases the loan company acts as agent of the holder of the note and mortgage in the collection of principal and interest and that such knowledge is imputed to the plaintiff. No authority is cited sustaining that contention and we know of none."

The equities of the case are all in favor of plaintiff. She duly recorded her assignment. No act or conduct of hers could, in the slightest degree, have lead defendants to believe that the Conservative Loan & Trust Company was her agent. The Commerce Trust Company knew, at the time they paid off the loan, that the same was not due and that plaintiff was the owner and holder of this paper, and on this proposition it was stipulated by counsel at the trial as follows:

"It is admitted by all parties that the abstract extended at the time the loan was made by the Commerce Trust Company on the 22nd day of March, 1923, showed an assignment of the Conservative Loan Company mortgage to Josephine Green, which assignment is in evidence in this case. It is further agreed that the abstract was examined and this mortgage and assignment was called to the attention of the attorney for the Commerce Trust Company before payment was made on the loan."

The Commerce Trust Company, as agent for the Kincades, with absolute knowledge that plaintiff was the owner and holder of the note and mortgage in question, deliberately paid the money to the Conservative Loan & Trust Company. The difficulty here presented occurred because of the gross negligence of said Commerce Trust Company, and plaintiff should not be compelled to suffer loss on account thereof.

It is undisputed that plaintiff is an innocent purchaser for value; that she had

possession of the note and mortgage at the time the money was paid to the Conservative Loan & Trust Company, and that such payment was made before maturity of the note. There is no competent evidence in the record tending to establish agency between plaintiff and the Conservative Loan & Trust Company. Plaintiff's motion for a directed verdict should have been sustained.

Judgment should be reversed and the cause remanded, with directions to enter judgment for plaintiff.

TEEHEE, HALL, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. L. R. A. 1918F, 731; 21 R. C. L. 861, et seq.; 3 R. C. L. Supp. p. 1198; 4 R. C. L. Supp. p. 1436; 5 R. C. L. Supp. p. 1176; 6 R. C. L. L. Supp. p. 1292; 7 R. C. L. Supp. p. 723. (3) 3 R. C. L. p. 1289; R. C. L. Perm. Supp. p. 1023. See "Agency," 2 C. J. §342 p. 685, n. 32; §731, p. 961, n. 10. "Bills and Notes," 8 C. J. §828, p. 593, n. 24. "Mortgages," 41 C. J. §720, p. 700, n. 26.