## ANTHONY et al. v. CLARK.

No. 28018. March 22, 1938.

Rehearing Denied May 10, 1938.

Wesley E. Disney and Robert W. Raynolds, for plaintiffs in error.

H. R. Helmbrecht and J. F. Murray, for defendant in error.

GIBSON, J. D. H. Clark, Jr., commenced this action in the district court of Osage county against Ida M. Anthony, Myrtle A. Alcorn, and J. S. Alcorn, her husband, and First National Bank & Trust Company, and certain others, to recover on a promissory note and to foreclose the real estate mortgage given as security therefor. The cause was tried to the court without a jury, resulting in a personal judgment against Ida M. Anthony and Myrtle A. Alcorn and foreclosure of the mortgage as to all defendants.

The parties are herein designated in the order of their appearance at the trial, or by name.

The note and mortgage sued upon were executed and delivered to plaintiff by defendant Ida M. Anthony at a time when the land was encumbered by a first mortgage in the hands of one Collinson.

The defendant J. S. Alcorn took a deed to the premises in the name of Myrtle A. Alcorn, and, pursuant to an agreement with plaintiff, paid off the Collinson mortgage with the understanding between him and plaintiff that the land should be disposed of and the proceeds applied to the pro rata discharge of the sums Alcorn and plaintiff had invested. In this respect it was agreed that plaintiff's mortgage should become a first lien, but that he and Alcorn would prorate the proceeds of any sale according to the amounts of the respective mortgages.

In his separate answer Alcorn pleads the above facts, but prays only for the cancellation of plaintiff's mortgage as a cloud upon his title. During the litigation Alcorn acquired title to the premises by deed from Myrtle A. Alcorn.

The deed executed by Ida M. Anthony to Myrtle A. Alcorn was made subject to both the aforesaid mortgages. Mrs. Alcorn in her separate answer denies the indebtedness and pleads the statute of limitations.

Plaintiff admits the agreement with Alcorn as alleged, but says in his reply that Alcorn has violated the same by placing another mortgage upon the land and by disposing of a portion thereof by deed, thus placing himself in a position where he cannot comply with the agreement.

The assignments of error challenge the sufficiency of the evidence to sustain the finding that the statute of limitations had not run.

At a time when the fee title was in Myrtle A. Alcorn, the defendant J. S. Alcorn indorsed upon the note a statement as follows: "For consideration of $1.00 the within note is hereby extended to July 1st, 1934. Myrtle A. Alcorn per J. S. Alcorn." The defendants merely deny the existence of agency relationship between Mrs. Alcorn and J. S. Alcorn, and assert that since there was no valid extension of the note, the statute of limitations had run before suit was commenced.

Although the case was one triable to a jury as a matter of statutory right, the same was of equitable cognizance, and where jury is waived, as here, the weight of the evidence controls determination of the issues.

The general rule applying to an agent's authority is stated in Beasley v. Sparks, 163 Okla. 15, 20 P.2d 584, as follows:

"The question of agency and the scope and extent of the agent's authority are to be gathered from all the facts and circumstances in evidence, and are to be determined either by the jury or the court as a trier of fact."

But defendants say that a transaction involving commercial paper is involved here, and that the above rule is of limited application in such case. They contend that under the Negotiable Instruments Law, section 11320, O. S. 1931, the plaintiff was bound to ascertain the extent of Alcorn's authority as agent for Mrs. Alcorn. The section reads as follows:

"A signature by 'procuration' operates as notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent in so signing acted within the actual limits of his authority."

It is here said by defendants that the authority to execute and indorse bills and notes as agent will not be implied from the facts and circumstances in evidence unless the particular act is absolutely necessary to the exercise of some express authority. Stock Exchange Bank v. Williamson, 6 Okla. 348, 50 P. 93.

Although the aforesaid statute and the last-cited decision may apply to the agent's act in attempting to bind his principal for the debt evidenced by the instrument, we are of the opinion that they do not apply to indorsements of an agent purporting only to extend the time for payment of an existing obligation. The agent's authority so to do may be gathered from all the facts and circumstances in evidence as stated in Beasley v. Sparks, supra.

There is no evidence of express authority in J. S. Alcorn to negotiate for Mrs. Alcorn an extension on the note, but that authority may well have been implied from the abundance of testimony showing that Alcorn had complete charge of the entire transaction for Mrs. Alcorn, including the creation of the indebtedness and the matters looking toward the settlement and discharge thereof. It is clear that the authority so exercised constituted a reasonable and necessary incident to the accomplishment of the ultimate object of the agency.

Defendants further charge that the trial

court erred in not holding that J. S. Alcorn had a prior mortgage lien upon the premises in question, and further erred in decreeing foreclosure in favor of the plaintiff.

In this connection it is argued that, although there may have been a merger of the first mortgage after Alcorn acquired the fee, equity will not allow such merger to operate against Alcorn to defeat his prior lien arising by reason of the payment of the first mortgage pursuant to agreement with the plaintiff. Saum v. Hine, 178 Okla. 151, 61 P.2d 1059.

The record shows that Alcorn and the plaintiff agreed that Alcorn should pay the Collinson mortgage then about to be foreclosed, and that Alcorn should have a lien on the premises for the amount thereof, and that such lien and the plaintiff's mortgage should be coequal in point of priority. When the mortgage was paid, the fee title stood in the name of Mrs. Alcorn. Thereafter Alcorn acquired the fee.

The circumstances here present are analogous to those before the court in Saum v. Hine, supra. There the first mortgagee acquired the fee title, and, as to the effect of such acquisition upon the second mortgagee, the court held as follows:

"Where the owner of a first mortgage acquires the title and there exists at the time a second mortgage on the premises, a merger of the first mortgage with the title will not result, so as to make the second mortgage the prior lien unless it clearly appears that a merger was intended."

It was further held in that case that if it be to the interest of or beneficial to the first mortgagee that a merger do not take place, the intention will be presumed in accordance with such interest. The rule announced in that case does not apply where the owner of the merged estates created the subsequent liens.

Under an agreement between these parties looking toward a solution of the difficulties surrounding their respective investments in the property, they agreed that Alcorn should have a lien upon the land, or be subrogated to the rights of Collinson, the first mortgagee, limited, however, to coequal standing with the plaintiff's mortgage. When he acquired the fee, there was no merger of his estates unless he so intended. There is no evidence of such intention. In fact, the evidence is to the contrary. Though in law the estates of Alcorn merged, equity will not permit a merger, and will carry out his intention by

decreeing against such merger. Saum v. Hine, supra. Without a merger here the parties have equal liens, except as to amount, and are entitled to share pro rata in the proceeds of the sale of the property.

In this case the equitable jurisdiction of the trial court is invoked. The court should consider any equitable defense interposed. The aforesaid agreement was pleaded and proved, and the trial court should have considered it in rendering its decree. This was not done. Although plaintiff seems to think this theory was not presented below, we find the defense insisted upon in counsel's opening statement, and evidence thereof introduced at the trial, as well as pleaded in the answer. We consider the substantial rights and real position of the parties as shown by the evidence. Cobb v. Whitney, 124 Okla. 193, 255 P. 577.

Alcorn agreed that he and plaintiff should dispose of the land and prorate the proceeds according to the amount of their liens. He has since placed an encumbrance upon the premises. Contrary to plaintiff's contention, this act did not destroy Alcorn's lien. Plaintiff was not injured thereby, for he still possesses the same rights as previously existed under the agreement, and his security is unimpaired. That Alcorn's interest may have passed in whole or in part to subsequent encumbrancers or grantees is of no consequence. He is entitled to prorate with them, on the basis of the original agreement, any proceeds that may be derived from a sale of the premises.

However, all delinquent taxes and other charges, if any, against the land should be borne by Alcorn as a duty imposed upon him as the owner of the fee title. We find no evidence of any agreement to the contrary.

Our conclusion here is wholly in agreement with the decision in the Saum Case, above.

Plaintiff's mortgage was properly foreclosed, but the application of the proceeds of sale as directed by the decree was error. While the Alcorn lien arising from the payment of the Collinson mortgage was entitled to pro rata payment with the plaintiff's lien, the same is not legally subject to foreclosure under the circumstances. It was foreclosed in merger with the fee title; equity merely preserves it as a valid credit to the fee owner as against subsequent or inferior liens. For all other purposes the estates merge in such case. Here, by agreement, the liens are of equal standing.

The judgment of the trial court so far as it would apply the proceeds of the sale first to payment of plaintiff's judgment is reversed, and the cause remanded, with directions to enter judgment for the application of the proceeds in accordance with the views herein expressed, and to take such further proceedings as may be consistent herewith. In all other respects the judgment is affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur.