The STATE of Oklahoma on relation of the COMMISSIONERS OF the LAND OF-FICE of the State of Oklahoma, Plaintiff in Error,

v.

O. L. CRESWELL and Retta Creswell, Defendants in Error.

No. 40382.

Supreme Court of Oklahoma.

Feb. 25, 1964.

Rehearing Denied April 14, 1964.

R. H. Dunn, Francis Stewart, N. A. Gibson, W. G. Jones, Oklahoma City, for plaintiff in error.

H. C. Ivester, Ivester & Ivester, Sayre, for defendants in error.

HALLEY, Vice Chief Justice.

O. L. Creswell and Retta Creswell, plaintiffs below, commenced this suit to quiet title to certain real property against defendant, the State of Oklahoma on relation of the Commissioners of the Land Office. Parties will be referred to by their trial court designations.

Plaintiffs' petition and amendment to petition alleged that they were the owners of and in full and exclusive possession of the real property involved herein, Lots 1 through 6, inclusive, in Block Six in the Jones-Bradley Addition to the Town of Elk City, Oklahoma. They alleged that W. F. Estes and his wife had previously owned the property as their homestead and that it was the homestead of the Estes family when a money judgment was rendered on January 19, 1952, in favor of defendant against Mr. and Mrs. Estes for $2,125.28, together with interest and costs. They alleged that the property remained the homestead of Mr. and Mrs. Estes at all times thereafter until it was conveyed by deed to plaintiffs on October 1, 1957. They further alleged that the judgment of defendant constitutes an apparent lien and a cloud on plaintiffs' title and asked for a decree that defendant's judgment against Mr. and Mrs. Estes was and is not a lien against the property.

Defendant's answer admitted that the money judgment when rendered against Mr. and Mrs. Estes was not a lien against the property because the property was then occupied by them as their homestead. However, defendant alleged that the property lost its homestead characteristics prior to the time the plaintiffs took title to the property. Defendant alleged that the property lost its homestead characteristics because of one of the following facts: that "the said Lula Estes abandoned said W. F. Estes in the early part of the year 1956 or prior thereto; that at the time of said abandonment the only child of the two was grown and married, and not living on said property;" and that Mr. and Mrs. Estes were divorced (by a decree entered on March 20, 1959) and "that all homestead rights in said property had been renounced by the dissolution of the marriage relation of the said W. F. Estes and Lula Estes, his wife, so that the plaintiffs herein had knowledge of the divorce proceedings between the said W. F. Estes and Lula Estes and the recorded settlement agreement between them * * *."

After trial to the court, judgment was entered in favor of plaintiffs quieting title to their property as against the lien of defendant's money judgment. Defendant's motion for new trial was overruled and defendant appeals.

On appeal defendant has apparently renounced or given up any argument that the property lost its homestead characteristics by reason of the allegation that Mrs. Estes abandoned her husband in 1956 or by reason of the divorce of Mr. and Mrs. Estes in 1959. Defendant's argument on appeal is that the homestead characteristics which protected the property from the lien of defendant's judgment were voluntarily removed by the Esteses by their separation agreement in 1955 and that the judgment immediately became an enforceable lien against the property and followed the title into plaintiffs' hands.

As we have pointed out, by its answer defendant admitted that the property was impressed with homestead characteristics prior to and at the time defendant's money judgment was obtained against Mr. and Mrs. Estes. When homestead character once attaches to land, the burden of proving abandonment of homestead is on the party alleging it. Alexander v. Love County Nat. Bank of Marietta, 203 Okl. 402, 223 P.2d 363; Russell v. Key, 195 Okl. 49, 155 P.2d 238; Japp v. Sapulpa State Bank, 90 Okl. 56, 215 P. 1059. We have also held that whether a homestead has been abandoned is a question of fact, ascertainable from the circumstances surrounding the particular transaction, and such abandonment must be established by clear and convincing evidence. Mercer v. Mercer, Okl., 365 P.2d 554. In Hildebrand v. Harrison, Okl., 361 P.2d 498, we held it must be established by the most clear, conclusive and convincing evidence. In Kunauntubbee v. Greer, Okl., 323 P.2d 725, we said such evidence must be clear, cogent and convincing. Defendant in the instant case had the burden of proving that Mr. and Mrs. Estes abandoned their homestead and this must be established by the clearest evidence. Therefore we must examine the evidence.

Defendant's only evidence was the instrument entitled separation agreement and property settlement. The instrument was acknowledged by Mr. Estes on February 14, 1955, and by Mrs. Estes on February 19, 1955. The terms of the instrument provided that they agreed to a mutual separation and to become strangers to each other.

Defendant cites Witt v. Witt, Okl., 280 P.2d 709, for the principle that separation contracts between married parties are valid and authorized by 32 O.S.1961 § 6.

Before defendant can use the separation contract or agreement as evidence that Mr. and Mrs. Estes abandoned their homestead, however, there must be proof that the contract was performed according to its terms. Miller v. Young, 197 Okl. 503, 172 P.2d 994; Messick v. Johnson, 167 Okl. 463, 30 P.2d 176.

Although the record shows that Mr. and Mrs. Estes signed and acknowledged the separation agreement, there is no proof as to when they separated in accordance with its terms. The only testimony introduced consisted of two witnesses called by plaintiffs. Such testimony is some evidence that they separated at some time before or on the date the deed was given to plaintiffs. This may be seen from the following testimony of Mr. Estes:

"Q. Were you and your wife living on this property in 1951?

"A. Yes.

"Q. And 1952?

"A. Yes.

"Q. And 1953?

"A. Yes.

"Q. When did you and she separate, if you remember?

"A. I couldn't tell you the year exactly."

On cross-examination, Mr. Estes testified:

"Q. Mr. Estes, I believe you have stated here to the court that you were the grantor to Mr. Creswell of this property?

"A. What was that?

"Q. That you granted, that you deeded this property and *the date you deeded this property was in 1957,* and that you deeded this property to Mr. Creswell; *you and your wife at that time were separated?*

"A. Yes.

"Q. And you entered into a separation agreement and property settlement jointly?

"A. Yes.

"Q. Previous to the time that you had given or sold this land in question to Mr. Creswell?

"A. That is right.

"Q. That you had not at that time had a divorce decree?

"A. No.

"Q. You had just been separated and a separate property settlement had been entered into between the two of you, and entered into the record here in Beckham County?

"A. Yes.

"Q. That is all." (Emphasis ours)

The only other witness was O. L. Creswell, one of the plaintiffs, who testified about this as follows:

"Q. Now, as far as you know did Mr. Estes live on this property?

"A. Yes, sir.

"Q. *And his wife lived there with him, or part of the time?*

"A. *Yes.*

"Q. That is all.

### CROSS-EXAMINATION

"Q. Mr. Creswell, at the time that Mr. Estes deeded this property to you you testified a while ago that *part of the time* that you have known this family, the Estes family, that *they lived there together?*

"A. Yes.

"Q. At the time that this land was deeded to you was she living on the property?

"A. No." (Emphasis ours)

■ The most that can be said about this testimony is that Mr. and Mrs. Estes were not living together on the property on October 1, 1957. This may be said to be evidence that the parties were separated under the terms of the contract on October 1, 1957. But this does not help defendant in meeting the burden of proof imposed by the above cited law. This is true because of the statutes in effect during the time involved.

Prior to June 5, 1957, 31 O.S.1951 § 1, provided:

"The following property shall be reserved to the head of every family

residing in the State, exempt from attachment or execution and every other species of forced sale for the payment of debts except as hereinafter provided.

"1. The homestead of the family shall consist of the home of the family whether the title to the same be lodged in or owned by the husband or wife. * * *"

■ This statute was amended and as amended became effective on June 5, 1957. As amended, it now provides (31 O.S.1961 § 1):

"The following property shall be reserved *to every person owning a home and residing therein or* to the head of every family residing in the State, exempt from attachment or execution and every other species of forced sale for the payment of debts except as herein provided.

"1. *The home of such person or head of family.* The homestead of the family shall consist of the home of the family whether the title to the same be lodged in or owned by the husband or wife. * * *" (Emphasis ours)

We have italicized the addition made to the statute by the 1957 amendment. It is manifest that the statute as amended, and in effect after June 5, 1957, protects this property from defendant's judgment lien thereafter, though Mr. and Mrs. Estes are separated, as long as Mr. Estes owned it and was residing thereon. All the evidence in this case is that he owned it and continued to reside on it until it was deeded to plaintiffs. Defendant concedes in its brief that if Mr. Estes continued to reside there after June 5, 1957, the land would be protected from claims arising thereafter.

Since defendant failed to meet the burden of proof to establish by clear and convincing evidence that Mr. and Mrs. Estes separated under the terms of the separation agreement prior to June 5, 1957, when

the above quoted statute as amended became effective, the homestead characteristics remained upon the land until it was deeded to plaintiffs.

The trial court's judgment that the property was protected by the homestead statutes from defendant's judgment lien was not against the clear weight of the evidence and should be sustained. Mercer v. Mercer, supra.

Defendant argues a second proposition. However, it is based on the assumption that defendant's judgment lien attached to the land prior to June 5, 1957. Since we have decided this point adversely to defendant, further discussion of the second proposition is unnecessary.

Affirmed.